IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PATRICK MOCCALDI,

                             Plaintiff,

v.                                                              Case No. 22-1146-DDC

PRATT CITY FORD, LLC,

                             Defendant.

## MEMORANDUM AND ORDER

This case began with a commonplace event—purchase of a used car.  And it turns on a commonplace complication—the used car was in one state and the buyer in another.  But, in the end, this case gets no traction.  The buyer's location when he purchased the car—and when he experienced the injuries allegedly derived from that purchase—puts plaintiff's claims on a collision course with the conflict of laws doctrine and statutory limits on extraterritoriality.  So, this case has reached the end of its road.

Plaintiff Patrick Moccaldi brings this action under the Kansas Consumer Protection Act (KCPA), alleging defendant Pratt City Ford, LLC committed deceptive and unconscionable acts in connection with Moccaldi's vehicle purchase.  Moccaldi argues that Pratt City violated the KCPA in three ways:  (1) by failing to deliver the vehicle's title timely (within the 60 days required by Kansas statute); (2) by falsely stating to Moccaldi that he must purchase an extended warranty or service contract along with the vehicle; and (3) by failing to engage in the sales contract's outlined arbitration procedure.

This diversity case comes before the court on cross summary judgment motions. Defendant Pratt City filed a Motion for Summary Judgment (Doc. 16) arguing, among other things, that "Kansas law does not apply . . . because [the vehicle] was to be registered in Florida, the state of Moccaldi's residence" and so "Moccaldi's claim, if any, must be based on Florida law." Doc. 17 at 1, 4. On the same day, plaintiff Moccaldi also filed a Summary Judgment Motion (Doc. 18). It challenges Pratt City's "belief that it is above Kansas law and that Kansas' statutory and case law . . . does not apply to it." Doc. 19 at 1. Moccaldi also argues that his "declaration, underlying vehicle contract, and stipulations show that there are no issues as to any material fact" and entitle him to summary judgment on his KCPA violation claims. Doc. 18 at 1.

The court grants summary judgment to Pratt City, concluding that Moccaldi has failed to present a triable issue on his claims. The court reaches this conclusion for two separate and independently sufficient reasons. *First*, the court's conflict of laws analysis identifies Florida law as the governing law. Moccaldi has failed to adduce evidence that the parties made the vehicle sales contract in Kansas, that contract performance should have occurred in Kansas, or that he experienced his alleged injuries in Kansas. So—whether the court characterizes the case as a contract case or a tort case—Florida law governs, and the court must dismiss claims derived from Kansas statutory law.

*Second*, and even if Kansas law governed Moccaldi's claims, the KCPA doesn't apply extraterritorially. Moccaldi is a Florida citizen. Doc. 15 at 2 (Pretrial Order ¶ 2.a.i.); Doc. 21-1 at 1 (Moccaldi Decl. ¶ 2). And Moccaldi signed the contract to purchase the vehicle in Florida. Doc. 15 at 2 (Pretrial Order ¶ 2.a.iii.). Moccaldi has failed to adduce any evidence or a viable legal theory that the KCPA applies to a Florida consumer who purchased a car in Florida. So, the KCPA doesn't provide Moccaldi with an avenue for relief, and this case comes to an end.

The court thus grants Pratt City summary judgment against Moccaldi's claims and denies Moccaldi's summary judgment motion on those same claims.

To elucidate its reasoning, the court begins with the background facts. They're presented in Part I. Then, in Part II, the court presents the legal standard for summary judgment motions. Next, the court engages in a conflict of laws analysis in Part III, followed in Part IV by a discussion of the KCPA and extraterritoriality. After which the court recites its conclusions.

### I.      Background

The following facts either are stipulated facts taken from the Pretrial Order (Doc. 15), or uncontroverted for purposes of the parties' summary judgment motions, unless otherwise noted.

#### *Moccaldi's Purchase of the Car*

Patrick Moccaldi is a resident of Florida. Doc. 15 at 2 (Pretrial Order ¶ 2.a.i.); Doc. 19-1 at 1 (Moccaldi Decl. ¶ 2). He purchased a used 2014 Land Rover in December 2021 from Pratt City Ford, LLC. Doc. 15 at 2 (Pretrial Order ¶ 2.a.ii.); Doc. 19-2 at 1–2 (Pl. Ex. B). Both parties stipulate that Moccaldi never came to Kansas to negotiate or complete the purchase of the Land Rover. Doc. 15 at 2 (Pretrial Order ¶ 2.a.iii.). Instead, Pratt City sent a representative to Florida to sign all the documents and paperwork with Moccaldi. Doc. 15 at 2 (Pretrial Order ¶ 2.a.iv.). The parties dispute whether Pratt City required, and whether Moccaldi purchased, an extended warranty or service contract in conjunction with the Land Rover purchase. Doc. 19-1 at 1–2 (Moccaldi Decl. ¶¶ 6–7); Doc. 20 at 1.

#### *Delivery of Title*

The sales contract indicates the sale occurred on December 20, 2021. Doc. 19-2 at 2 (Pl. Ex. B). Moccaldi and Pratt City both understood that Moccaldi needed the Land Rover titled in Florida. Doc. 15 at 2 (Pretrial Order ¶ 2.a.v.). The record contains the application for certificate of title with the Florida Department of Highway Safety and Motor Vehicles and the Florida

certificate of title itself, both dated March 4, 2022.  Doc. 17-1 at 2–3 (Def. Ex. A); *id.* at 5 (Def. Ex. B).  Florida law provides a vehicle purchaser 30 days from the purchase date to title the vehicle.  Doc. 15 at 2 (Pretrial ¶ 2.a.vii.).

### *Arbitration*

The sales contract includes an arbitration provision.  Doc. 19-2 at 4 (Pl. Ex. B).  At the end of February, Moccaldi filed a demand for arbitration with the American Arbitration Association (AAA) and paid the consumer's portion of the filing fee, $200.  Doc. 19-1 at 3 (Moccaldi Decl. ¶¶ 10–11).  A letter from AAA, dated March 25, 2022, requests that Pratt City submit its portion of the fees, totaling $3,050, by April 11, 2022.  *Id.* (Moccaldi Decl. ¶¶ 12–13); Doc. 19-3 at 1–2 (Pl. Ex. C).  A second AAA letter, dated April 12, 2022, asserts that AAA hadn't received Pratt City's fees and requests Pratt City to remit them by April 26, 2022.  Doc. 19-1 at 3 (Moccaldi Decl. ¶ 14); Doc. 19-4 at 1 (Pl. Ex. D).  A third AAA letter, dated May 4, 2022, reports that Pratt City failed to remit the fee and failed to adhere to the AAA policies about consumer claims.  Doc. 19-1 at 4 (Moccaldi Decl. ¶ 15); Doc. 19-5 at 1 (Pl. Ex. E).  In an email to Consumer Case Filing Team—dated May 10, 2022—Pratt City's attorney requests instructions about how to "submit payment for the fees and the arbitrator's deposit" and references the case number assigned by AAA to Moccaldi's case.  Doc. 17-1 at 12 (Def. Ex. E).

## II.   Legal Standard

Summary judgment is appropriate when the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).[1]  When it applies this standard, the court views the evidence and draws

---

[1]      In its Response to plaintiff's Motion for Summary Judgment (Doc. 20), Pratt asserts that the parties dispute material facts:  Moccaldi's alleged purchase of an extended warranty/service contract, Moccaldi's alleged inability to drive and loss of rental income, Pratt's reasons for the timing of its title delivery, and Pratt's alleged refusal to arbitrate.  Doc. 20 at 1–2.  These disputes, however, don't

inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue."  *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 247–48.

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'"  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'"  *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'"  *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49.  "To accomplish this, the facts must be identified by reference to

---

undermine Pratt's own summary judgment motion.  *See* 10A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2720 (4th ed. 2023) ("[A] party may argue that no issue exists in the hope that his legal theory will be accepted, but at the same time the movant may maintain that there is a genuine factual dispute in the event his theory is rejected or the opponent's is adopted.  A party moving for summary judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for purposes of his own motion.").

affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)). When deciding whether the parties have shouldered their summary judgment burdens, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The federal courts don't view summary judgment as a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. To the contrary, it's an important procedure "designed 'to secure the just, speedy[,] and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

While a court can treat cross motions for summary judgment separately, and "the denial of one does not require the grant of another[,]" *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979), it also may address the legal arguments together, *Berges v. Standard Ins.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010). Here, the two motions, and their legal arguments, overlap substantially. Indeed, Moccaldi's Motion for Summary Judgment (Doc. 18) and his Memorandum in Opposition of Defendant's Motion for Summary Judgment (Doc. 21) are nearly identical—almost to the word. The court thus addresses the legal arguments made by the dueling motions together.

## III.       Conflict of Laws

Moccaldi asserts claims under the Kansas Consumer Protection Act, alleging deceptive acts and practices under Kan. Stat. Ann. § 50-626 and unconscionable acts and practices under Kan. Stat. Ann. § 50-627. Doc. 15 at 6 (Pretrial Order ¶ 4.a.). As a federal court presiding over a diversity case, the court must determine which state's law applies before turning to the merits of Moccaldi's KCPA claims.

In a diversity case, the court applies the substantive law of the forum state, including its conflict of laws rules. *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir.

2010) (citation omitted); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Kansas courts apply the Restatement (First) of Conflict of Laws to resolve conflict of laws issues. *In re K.M.H.*, 169 P.3d 1025, 1031–32 (2007). So, the court begins its conflict of laws analysis under Kansas conflict of laws rules, below.

### A.      Existence of a Conflict of Laws

When conducting a conflict of laws analysis, the court, first, must determine whether a conflict exists. *Wingerd v. Kaabooworks Servs., LLC*, No. 18-CV-2024-JAR-KGG, 2019 WL 1171700, at *17 (D. Kan. Mar. 13, 2019) [hereinafter *Wingerd I*]. "Where the outcome of a dispute would be the same under the laws of either state, the Court need not decide the conflict[.]" *Id.* (citing *Shutts v. Phillips Petroleum Co.*, 732 P.2d 1286, 1291 (Kan. 1987)). "The existence of a conflict can only be determined in the context of a specific law applied to a specific issue." *Emps. Mut.*, 618 F.3d at 1170.

Here, the court first inquires whether Moccaldi's claims for deceptive or unconscionable acts would come to the same outcome under the KCPA as they would under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). Then, the court determines whether the Kansas motor vehicle titling statute—a law which Moccaldi relies on, in part, to establish his KCPA deception claims—has a counterpart under Florida law.

As our court has explained, "states apply different standards to determine what constitutes unfair or unconscionable conduct capable of violating state consumer protection laws." *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1337 (D. Kan. 2018). Under Florida case law, unconscionable conduct or unfair practice under the FDUTPA "is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Hucke v. Kubra Data Transfer, Corp.*, 160 F. Supp. 3d 1320, 1328 (S.D. Fla. 2015) (citation and internal

quotation marks omitted).  By contrast, the Kansas Supreme Court has held that an unconscionable act that violates the KCPA "requires a showing of both deception and unequal bargaining power."  *Delcavo v. Tour Res. Consultants, LLC*, No. 21-2137-JWL, 2021 WL 4453572, at *5 (D. Kan. Sept. 29, 2021) (citing *Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 314 P.3d 852, 867 (Kan. 2013)).

The KCPA and the FDUTPA also diverge when they expound on applying these standards.  The FDUTPA identifies how these standards apply to specific contexts, but the KCPA identifies how these standards apply to broader categories of circumstance.  The FDUTPA, after providing that unconscionable acts and unfair practices are unlawful, Fla. Stat. § 501.204, explains how it applies to social media platforms, Fla. Stat. § 501.2041, and online crowd-funding campaigns, Fla. Stat. § 501.2042.  The KCPA takes a broader approach.  The Kansas statute enumerates a non-exhaustive list describing circumstances that would meet the requirement of the term "unconscionable," including, for example, that "the consumer was unable to receive a material benefit from the subject of the transaction," or that the transaction "was excessively onesided in favor of the supplier."  Kan. Stat. Ann. § 50-627(b)(3)–(4).

Here, the states' divergent standards—and divergent approaches to explain how those standards apply—could produce different outcomes.  Moccaldi, relatively speaking, would have an easier time meeting the KCPA standard.  Though the Kansas act still would require him to prove deception, Moccaldi—as an individual consumer in dispute with a limited liability company that regularly sells automobiles—likely could satisfy the unequal bargaining power standard.  And Moccaldi's claims also fit more clearly into the broad KCPA categories than they would into the specific FDUTPA contexts.  Moccaldi's claim for unconscionable acts relies, in part, on his inability "to receive the bargained for material benefit" from the vehicle.  Doc. 15 at

7 (Pretrial Order ¶ 4.a.).  Moccaldi contends that Pratt City's alleged delay in providing him with title meant he "was unable to legally drive and utilize the subject vehicle . . . while awaiting title, as well as lost rental income for the vehicle's usage[.]"  Doc. 19-1 at 4 (Moccaldi Decl. ¶ 16).[2] The court recognizes—without deciding—that this circumstance, if proven, might suffice as an unconscionable act that violates Kan. Stat. Ann. § 50-627(b)(3).  In other words, his claim might pick up speed more easily under the KCPA.

The climb for Moccaldi to plead a viable claim under the FDUTPA appears steeper.  The Florida standard, to achieve unconscionability, would require Moccaldi to prove Pratt City's actions were "immoral, unethical, oppressive, unscrupulous or substantially injurious"—a seemingly more onerous task than demonstrating deception and unequal bargaining power. *Hucke*, 160 F. Supp. 3d at 1328.  And the FDUTPA doesn't contain a specific context that aligns with Moccaldi's situation.  That is not to say that only claims sounding in these specific contexts are viable under the FDUTPA.  But, without a broader category for his claims, Moccaldi likely faces a steeper hill than he would if proceeding under the KCPA, where the statute provides such a category.

Another conflict of laws originates in the motor vehicle titling laws for Kansas and Florida.  Moccaldi's KCPA claims rely, in part, on Kan. Stat. Ann. § 8-135(c)(7)'s provision that failing to deliver title makes a vehicle sales contract "fraudulent and void."  Doc. 21 at 6–9 (citing Kan. Stat. Ann. § 8-135(c)(7)).  Moccaldi contends that Kansas courts have interpreted this "fraudulent and void" language strictly.  *Id.* at 6 (citing *Werdann v. Mel Hambleton Ford, Inc.*, 79 P.3d 1081, 1087 (Kan. Ct. App. 2003)).  While Kan. Stat. Ann. § 8-135(c)(7) doesn't

---

[2]      Pratt City disputes whether Moccaldi has provided sufficient evidence to establish his inability to drive or rent his vehicle.  Doc. 20 at 2.  The court doesn't decide that question here, or that Moccaldi lost rental income.  Instead, the court considers solely whether a viable claim might arise if Moccaldi proved these assertions.

provide a cause of action, Moccaldi argues this provision establishes the requisite deception for his claims under the KCPA: "With Kansas case law construing the failure to timely deliver title within 60 days to be 'fraudulent,' certainly such a failure also makes that conduct 'deceptive' as an act cannot be defined as fraudulent without being deceptive." *Id.* at 9. But, Moccaldi's line of reasoning wouldn't arise under Florida's motor vehicle laws. Florida's statute regulating the transfer of title to a motor vehicle contains no such "fraudulent and void" language based on title delivery. *See* Fla. Stat. § 319.22. So, concluding that a conflict exists, the court conducts a conflict of laws analysis next, starting with the threshold characterization question.

> **B.     Characterization of the Conflict**

To resolve a conflict of laws, the court must characterize the type of case at hand, and do so on an issue-by-issue basis. *Wingerd I*, 2019 WL 1171700, at *18. Our court has treated claims under the KCPA as ones sounding in tort. *See Schneider v. CitiMortgage, Inc.*, No. 13-4094-SAC, 2018 WL 6019343, at *2 (D. Kan. Nov. 16, 2018) (determining the place of the wrong to decide whether the KCPA governed plaintiffs' consumer protection claims); *Andy's Towing, Inc. v. Bulldog Bldg. Sys., Inc.*, No. 10-2354-JTM, 2011 WL 2433679, at *5–6 (D. Kan. June 14, 2011) (analyzing whether the KCPA or Oregon consumer protection law applied under the traditional tort rule of *lex loci delecti*). So, the court properly might characterize the issues here as a tort case.

But Moccaldi's claims also arise out of his vehicle sales contract, and so the court, alternatively, could characterize the case as one sounding in contract. Moccaldi's first theory of liability—which relies on Pratt City's alleged failure to deliver title in 60 days—rests on a Kansas statute providing that a contract is "fraudulent and void" apart from title delivery. Doc. 15 at 5–6 (Pretrial Order ¶ 4.a.). This first liability theory thus implicates contract validity. Moccaldi's second theory of liability—which relies on Pratt City's alleged false representation

that the sales contract was contingent on Moccaldi purchasing an extended service contract—likewise calls the sales contract's validity into question. *Id.* at 6 (Pretrial Order ¶ 4.a.). And Pratt City's third theory of liability—which relies on Pratt City's alleged refusal to arbitrate despite the contractual provision that required it—implicates contract performance. *Id.* The court thus could characterize this case as one sounding in contract.

In the end, though, it doesn't matter. As the court explains next, whether characterized as a tort case or a contract case, all roads lead to Florida.

### 1. Conflict of Laws and Tort Case

If a Kansas court characterizes a case as a tort case, then it follows the rule of *lex loci delicti*, which requires that "the law of the state where the tort occurred governs the merits of the litigation." *Anderson v. Com. Constr. Servs., Inc.*, 531 F.3d 1190, 1194 (10th Cir. 2008) (citing *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985)). The state where the tort occurred is "that place where the last event necessary to impose liability took place[,]" *Wingerd I*, 2019 WL 1171700, at *19, also described as "the state in which the wrong was felt[,]" *Delcavo*, 2021 WL 4453572, at *1. Kansas courts distinguish between the state "where the tortious act took place" and "the place where the injury was sustained" and consider the latter the place of the wrong. *Andy's Towing, Inc.*, 2011 WL 2433679, at *5. For instance, in *Andy's Towing*, a plaintiff in Oregon contracted to buy a building from a defendant in Kansas but the defendant failed to deliver the building. *Id.* at *6. Judge Marten of our court concluded that plaintiff had sustained the injury in Oregon, not Kansas. *Id.* He explained, even if "defendants made fraudulent misrepresentations in Kansas[,]" "plaintiff did not get what it bargained for in Oregon," and so Oregon is the place of the wrong. *Id.*

Here, Moccaldi sustained his alleged injuries in Florida. He allegedly failed to receive title in Florida in a timely manner. *See* Doc. 15 at 2 (Pretrial Order ¶ 2.a.v.) (stipulating that both

parties "understood the vehicle was to be titled in Florida"); Doc. 17-1 at 2 (Def. Ex. A) (showing application for certificate of title belatedly made on March 4, 2022, to the Florida Department of Highway Safety and Motor Vehicles); *Id.* at 5 (Def. Ex. B) (showing issuance of certificate of title in Florida on March 4, 2022). Moccaldi also signed the contract in Florida, which is when he allegedly agreed to the extended warranty defendant allegedly forced upon him. Doc. 15 at 2 (Pretrial Order ¶ 2.a.iii.) (stipulating that Moccaldi "completed the purchase by telephone calls and execution of documents in Florida"). And, Moccaldi's desired arbitration would have occurred in Florida—according to the sales contract's terms—so he experienced the alleged injury stemming from its nonoccurrence in Florida as well. Doc. 19-2 at 4 (Pl. Ex. B) (showing that the sales contract's arbitration provision required "the arbitration hearing shall be conducted in the federal district in which [the buyer] reside[s]" or in some cases "the federal district where [the] contract was executed"); *see also* Doc. 15 at 2 (Pretrial Order ¶ 2.a.i.) (stipulating that Moccaldi is "a resident of and domiciled in Florida"); *Id.* (Pretrial Order ¶ 2.a.iv.) (stipulating that the parties executed the contract in Florida). So, if the court characterizes this case as a tort case—because plaintiff pleads his claims under the KCPA—then the place of the wrong is Florida. And, under Kansas conflict of laws rules, Florida substantive law must govern. Alternatively, if the court characterizes this case as a contract case—as sussed out below—Florida substantive law still governs.

### 2. Conflict of Laws and Contract Case

The Restatement (First) of Conflict of Laws, which Kansas follows, identifies two categories of contract cases: cases where the place of the contract's execution governs and cases where the place of the contract's performance governs. *Moses v. Halstead*, 581 F.3d 1248, 1252 (10th Cir. 2009) (first citing *ARY Jewelers, L.L.C. v. Krigel*, 85 P.3d 1151, 1161 (Kan. 2004); then citing Restatement (First) of Conflict of Laws §§ 332 and 358 (Am. L. Inst. 1934)). Kansas

courts apply the law of the place of the contract's execution when "the question before the court goes to the substance of the obligation" and involves "determining [the] validity of [a] contract provision." *Id.* at 1252–53. But, "when the question goes to the manner and method of performance[,]" *id.* at 1252, Kansas courts apply the law of the place of the contract's performance.

Here, two of Moccaldi's theories of liability—untimely title and forced warranty—involve questions of the contract's validity and the substance of its obligation, as fleshed out in the next section. The third theory of liability involves Pratt City's alleged failure to perform under the contract's arbitration provision. Consistent with the court's obligation to consider characterization on an issue-by-issue basis, *Wingerd I*, 2019 WL 1171700, at *18, the court addresses both Restatement (First) contract categories below to discern whether Kansas or Florida substantive law applies.

### a.   Contract Validity and the Place of Contracting

The *lex loci contractus* doctrine requires that "'the law of the state where the contract is made governs.'" *Meyer v. State Auto. Mut. Ins. Co.*, No. 23-2357, 2023 WL 6961981, at *4 (D. Kan. Oct. 20, 2023) (quoting *In re K.M.H.*, 169 P.3d at 1031–32). "A contract is made where the last act necessary for its formation occurs." *In re K.M.H.*, 169 P.3d at 1032. When a party signs a contract, "he accept[s] the contract and it bec[omes] 'made' for choice of law purposes." *Andy's Towing, Inc.*, 2011 WL 2433679, at *4.

As noted above, Moccaldi's first two theories of liability here implicate contract validity. First, he argues that failure to deliver timely title makes the contract "fraudulent and void," which calls into question whether the contract is valid. Doc. 19 at 6. Second, he asserts that Pratt City falsely represented that the contract's viability turned on Moccaldi purchasing an

extended warranty or service contract. *Id.* at 9–10. This liability theory likewise contests the substance of the contract's obligation and whether Pratt City—at the contract formation stage—conditioned that obligation on purchasing an extended warranty. The state where the parties made the contract provides the governing law on these two contract validity issues. And the parties have stipulated that they executed "all documents and paper" in Florida. Doc. 15 at 2 (Pretrial Order ¶ 2.a.iv.). Signing these documents was "the last act necessary for [contract] formation," *In re K.M.H.*, 169 P.3d at 1032, so the contract became "'made' for choice of law purposes" in Florida, *Andy's Towing, Inc.*, 2011 WL 2433679, at *4. Florida substantive law thus governs these two contract validity issues. The court addresses next the other contract characterization category and Moccaldi's third theory of liability—Pratt City's failure to arbitrate.

### b. Contract Performance and the Place of Performance

The substantive law of the place of performance governs the second category of characterizing the contract. "In general, fulfillment of a contractual obligation goes to the manner and method of performance by the party charged with the obligation." *Moses*, 581 F.3d at 1254. Here, Moccaldi alleges Pratt City's refusal to engage in arbitration is one basis for liability under consumer protection law. Doc. 19 at 9–10. Pratt City refutes this alleged refusal to arbitrate, claiming it was willing to arbitrate but just tardy in its response. Doc. 20 at 1. Pratt City included in its exhibits emails exchanged with the AAA to prove its willingness. Doc. 17-1 at 12 (Def. Ex. E). So, the manner and method of Pratt City's performance (or nonperformance) of the contractual arbitration provision is at issue.

As already noted, the arbitration, had the parties convened it, would have taken place in Florida. Doc. 19-2 at 4 (Pl. Ex. B) (showing that the sales contract's arbitration provision

required "the arbitration hearing shall be conducted in the federal district in which [the buyer] reside[s]" or, in some cases, "the federal district where [the] contract was executed"); *see also* Doc. 15 at 2 (Pretrial Order ¶ 2.a.i.) (stipulating that Moccaldi is "a resident of and domiciled in Florida"); *Id.* (Pretrial Order ¶ 2.a.iv.) (stipulating that the parties executed the contract in Florida).  So, any alleged issue challenging the manner or method of performance under the arbitration provision also occurred in Florida.  Because Florida is the place of performance for the arbitration provision, Florida substantive law governs the third theory of liability, as well.

This conclusion completes the court's conflict of laws analysis.  No matter which road the court follows to characterize this case—whether under tort, contract validity, or contract performance—Florida substantive law governs.  Below, the court explains how this conflict of laws determination affects the outcome of the competing summary judgment motions.

### C.      Governing Law and the Grant of Summary Judgment on Statutory Claims

Recent cases in our district have held that when a conflict of laws determination points to one state, and a plaintiff brings statutory claims under the law of another state, the court should dismiss—or grant summary judgment against—those statutory claims.  In *Wingerd I*, plaintiff, a Kansas resident, worked for a live music and entertainment company and promoted a California music festival.  2019 WL 1171700, at *3–4.  Plaintiff's superiors decided to terminate his employment during the music festival in California after plaintiff underwent treatment for cancer.  *Id.* at *6.  While his bosses made the termination decision in California, plaintiff learned of it a couple of weeks later, over the telephone, while in Lawrence, Kansas.  *Id.* at *6–7.  In his complaint, plaintiff pleaded state statutory claims for wrongful termination under California's Fair Employment and Housing Act, along with other claims.  *Id.* at *19–20.  District Judge Robinson conducted a conflict of laws analysis and determined that the place of the wrong was

the place where the plaintiff had received notice about his termination (in Kansas) and not the

place where plaintiff's superiors made the termination decision (in California).  *Id.* at *19.

So, Judge Robinson applied Kansas law to plaintiff's statutory wrongful termination

claims.  *Id.*  But plaintiff never pleaded any claims under the Kansas Act Against Discrimination.

*Id.*  The court thus held that plaintiff's "statutory wrongful termination claims, which allege

violations of California law, fail to state claims for relief under Kansas law."  *Id.* at *20.  Judge

Robinson thus granted summary judgment to defendants against plaintiff's wrongful termination

claims.  *Id.*  When plaintiff moved to reconsider, Judge Robinson reaffirmed the propriety of

"subjecting Plaintiff's statutory claims to a choice of law analysis" noting that "other courts in

this district and across the country" have taken such an approach.[3]  *Wingerd v. Kaabooworks*

*Servs., LLC*, No. 18:CV-2024, 2019 WL 1587177, at *4 (D. Kan. Apr. 12, 2019) [hereinafter

*Wingerd II*].

Reaching a similar conclusion, District Judge Lungstrum subjected consumer protection

claims made under Minnesota consumer protection laws to a conflict of laws analysis.  *In re*

*Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1234 (D. Kan. 2015).  Because

plaintiffs were non-residents of Minnesota—and they had suffered their alleged injuries outside

of Minnesota—Judge Lungstrum held that "Minnesota law would not be chosen as the

---

[3]        The court in *Wingerd II* established the propriety of conducting a conflict of laws analysis to
determine whether to dismiss non-governing state law statutory claims by citing the following cases:  *In*
*re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1234 (D. Kan. 2015) (dismissing statutory
claims after noting that "at least some applicable states would therefore choose to apply their own laws
under choice-of-law rules that require application of the law of the place of injury"); *Clements v. Emery*
*Worldwide Airlines, Inc.*, 44 F. Supp. 2d 1141, 1143 (D. Kan. 1999) (conducting a conflict of laws
analysis to determine whether plaintiff is entitled to relief under Kansas Minimum Wage and Maximum
Hours law); *Andy's Towing, Inc.*, 2011 WL 2433679, at *6 (conducting a conflict of laws analysis to
determine whether Kansas or Oregon law governed the plaintiff's consumer fraud claims); *Thompson v.*
*Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 628 (D. Kan. 2008) (finding that "Kansas choice-of-law rules would
likely dictate that the laws of each state where prospective class members took their vehicles for service
would govern the tort claims of such class members" on statutory consumer protection claims).

applicable [governing] law" in at least some of the relevant states. *Id.* As a result, he concluded that non-resident plaintiffs couldn't assert claims under Minnesota's consumer protection statutes and thus dismissed those non-residents' claims based on these Minnesota statutes. *Id.*

Here, the court encounters an analogous situation. Moccaldi is a non-resident of Kansas. Doc. 15 at 2 (Pretrial Order ¶ 2.a.i.). And Moccaldi has asserted statutory claims under Kansas's consumer protection statutes. *Id.* at 6–7 (Pretrial Order ¶ 4.a.). After conducting a conflict of laws analysis, the court concludes that Florida law, not Kansas law, governs. And Moccaldi hasn't pleaded any Florida statutory claims. So, because Florida law applies, summary judgment in Pratt City's favor is appropriate.[4]

And even if the court were to shift gears and look solely to the KCPA—instead of conducting a conflict of laws analysis—Moccaldi's consumer protection claims would remain improper. The court cannot apply the KCPA extraterritorially, as Moccaldi's claims necessarily would require. And so, summary judgment in favor of Pratt City also is appropriate under an extraterritoriality analysis, which the court undertakes, now.

## IV.      KCPA and Extraterritoriality

Arguing that the KCPA may apply in this case, Moccaldi cites the KCPA's definition of a consumer. He asserts that this definition includes "no requirement that the consumer be a Kansan." Doc. 19 at 8 (citing Kan. Stat. Ann. § 50-624(b)). He's right. The statute doesn't limit itself, at that juncture, to Kansas consumers. And so—Moccaldi appears to suggest by

---

[4]      Courts in other districts have reached similar conclusions. *See, e.g.*, *Stone St. Servs., Inc. v. Daniels*, No. CIV.A. 00-1904, 2000 WL 1909373, at *6 (E.D. Pa. Dec. 29, 2000) (holding that the court must dismiss a claim brought under Pennsylvania's Unfair Trade Practices and Consumer Protection Law because "the Court concludes that Kansas, and not Pennsylvania, statutory consumer protection law applies"); *Hamby v. Ohio Nat'l Life Assurance Corp.*, No. CIV. 12-00122, 2012 WL 2568149, at *4 (D. Haw. June 29, 2012) (concluding that claims under Washington's Consumer Protection Act and its Insurance Fair Conduct Act fail to state claims because Hawaii, not Washington, law applies).

inference—he may bring KCPA claims as a consumer aggrieved by a Kansas supplier, even though he is a Floridian.

But in the act's very next line, the KCPA defines a "consumer transaction[.]"  This statute specifies that such a transaction includes "a sale, lease, assignment or other disposition for value of property or services *within this state*[.]"  Kan. Stat. Ann. § 50-624(c) (emphasis added). So, the act itself establishes that the Legislature didn't intend for the KCPA to apply extraterritorially.  And our district has reached this same conclusion several times.  For example, a Texas resident sued defendant Sprint under the KCPA to recover fees applied to her Texas telephone bill for services delivered to her in Texas.  *Montgomery v. Sprint Spectrum, L.P.*, No. 07-2227, 2007 WL 3274833, at *6 (D. Kan. Nov. 6, 2007).  Our court held that the KCPA didn't apply, even though the telephone contract specifically required its interpretation under Kansas law.  *Id.*  The court declined to apply "the KCPA in such an extraterritorial fashion," "whatever the agreement between the parties."  *Id.*  The court explained that the "KCPA is not intended to serve as a nationwide basis for liability against Kansas companies, based solely upon their presence in this state, when the actual consumer transaction does not occur here."  *Id.*  And so the court dismissed the Texan's KCPA claims.  *Id.*; *see also Wingate v. Barkman Honey, LLC*, No. 5:19-CV-04074, 2020 WL 362647, at *5 (D. Kan. Jan. 22, 2020) (holding the KCPA doesn't apply to Illinoisan's purchase in Illinois of a Kansas-based company's honey because "the KCPA does not apply to out-of-state transactions"); *Rasnic v. FCA US LLC*, No. CV 17-2064, 2017 WL 6406880, at *9 (D. Kan. Dec. 15, 2017) (rejecting a party's "attempt to extend Kansas law to out-of-state transactions" when Kan. Stat. Ann. § 50-624(c), "by [its] own terms, ha[s] no extraterritorial effect").

Refusing to apply the KCPA to out-of-state transactions also aligns with other states' "presumption that state statutes do not apply extraterritorially." *Wingerd II*, 2019 WL 1587177, at *4 (holding that California's Fair Employment and Housing Act didn't apply to conduct outside of California, in keeping with the presumption against extraterritoriality); *In re Syngenta*, 131 F. Supp. 3d at 1233 (addressing the presumption against applying Minnesota's consumer protection statutes extraterritorially and concluding those statutes apply "only to conduct taking place in Minnesota"). And Kansas state court decisions applying the KCPA concur. In a recent Kansas Court of Appeals decision, the court repeatedly emphasized the Legislature's intent, through the KCPA, to "advance the interests of *Kansas* consumers[,]" using the attributive noun "Kansas" to modify "consumer" no less than seven times in the opinion. *Kansas City Grill Cleaners, LLC v. BBQ Cleaner, LLC*, 454 P.3d 608, 612 (Kan. Ct. App. 2019) (emphasis added).

Here, Moccaldi's affidavit concedes that he is a resident of Florida. Doc. 21-1 at 1 (Moccaldi Decl. ¶ 2). The sales contract he submitted—as an exhibit in opposition to Pratt City's summary judgment motion—identifies Fort Richey, Florida, as his home address. Doc. 21-2 at 1 (Pl. Ex. B). And the parties have stipulated in the Pretrial Order to the transaction's location—in Florida. Doc. 15 at 2 (Pretrial Order ¶ 2.a.iii.). The parties agree that "Pratt Ford sent a representative who met Moccaldi in Florida to execute all documents and paperwork." *Id.* (Pretrial Order ¶ 2.a.iv.).

So, although Moccaldi purchased the Land Rover from a Kansas limited liability company, he purchased it in Florida and as a Floridian. Moccaldi wasn't a Kansas consumer and "the actual consumer transaction" didn't occur in Kansas. *Montgomery*, 2007 WL 3274833, at *6. He has alleged statutory claims for consumer protection violations under the KCPA but fails to "bring forward specific facts showing a genuine issue for trial" which might show that the

vehicle's purchase qualifies as a consumer transaction within Kansas. *Kannady*, 590 F.3d at 1169.  And Moccaldi presents no argument or authority to suggest that a Floridian may bring KCPA claims because of a consumer transaction completed in Florida.  The very exhibits and declarations Moccaldi filed to oppose Pratt City's summary judgment motion confirm the lack of any genuine issue about his residency or the transaction's location.

The court declines Moccaldi's invitation to abide KCPA claims "based solely upon [Pratt City's] presence in" the state of Kansas. *Montgomery*, 2007 WL 3274833, at *6.  To do so would allow the KCPA "to serve as a nationwide basis for liability against Kansas companies," like Pratt City. *Id.*  Without any facts to suggest Pratt City performed acts that could violate the KCPA in Kansas, Moccaldi's claims must come to an end.  The court holds that Pratt City is entitled to judgment as a matter of law and thus grants summary judgment in Pratt City's favor on Moccaldi's KCPA statutory claims.

## V.      Conclusion

After conducting a conflict of laws analysis, Florida law governs here, not Kansas law.  Also, the KCPA doesn't apply extraterritorially.  For these reasons, the court grants defendant Pratt City Ford, LLC summary judgment and denies plaintiff Patrick Moccaldi's summary judgment motion seeking judgment in his favor on the same claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Pratt City Ford, LLC's Motion for Summary Judgment (Doc. 16) is granted.

**IT IS FURTHER ORDERED THAT** plaintiff Patrick Moccaldi's Motion for Summary Judgment (Doc. 18) is denied.

As these rulings conclude all claims in this case, the court directs the Clerk of the Court to enter a judgment in Pratt City's favor and close the case.

**IT IS SO ORDERED.**

Dated this 4th day of January, 2024, at Kansas City, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge